**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH PIERCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 12 C 5725 |
| | ) |
| COOK COUNTY et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  For the following reasons, the court grants in part and denies in part the motion.

**BACKGROUND**

Plaintiff, Joseph Pierce, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Cook County Correctional Officers Jason Earl, Shenita Winston,[1] Anthony Parker, Michael Matanic, Norlander Young, Gordon (no first name given), and Mason (no first name given);[2] unknown Correctional Officers; the Cook County Sheriff (the "Sheriff"); and Cook County (the "County").  Pierce alleges that on July 21, 2011, while he was a pretrial

---

[1] The case caption spells Ms. Winston's first name as "Shanita," but she testified at her deposition that it is spelled "Shenita."  (Defs.' L.R. 56.1 Statement, Ex. D, Dep. of Shenita Winston at 4.)

[2] Officer Mason was named in the complaint but was never served with process.

detainee at the Cook County Jail (the "Jail"), the defendant correctional officers "severely" beat and kicked him while other defendant correctional officers stood by and failed to intervene. (Compl. ¶ 9.) As a result, plaintiff allegedly suffered serious eye trauma and fractures to his orbital and jaw bones. The complaint contains four counts: § 1983 excessive force and failure to intervene against the defendant officers (Count I); state-law battery against the defendant officers (Count II); respondeat superior against the Sheriff (Count III); and indemnification against the County (Count IV).

Defendants move for summary judgment.

## DISCUSSION

### A.   Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Kvapil v. Chippewa County, Wis., 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986)); see also Bunn v. Khoury Enters.,
Inc., 753 F.3d 676, 681-82 (7th Cir. 2014).  The court will enter
summary judgment against a party who does not "come forward with
evidence that would reasonably permit the finder of fact to find in
[its] favor on a material question."  Modrowski v. Pigatto, 712
F.3d 1166, 1167 (7th Cir. 2013).

**B.   Facts**

On August 27, 2010, Pierce entered the Jail after his arrest
for armed robbery.  He remained there until he was convicted and
sentenced in late 2011 to ten years' imprisonment in the Illinois
Department of Corrections.  Pierce is currently in custody at the
Pontiac Correctional Center.  (Pl.'s Resp. to Defs.' L.R. 56.1
Statement ¶ 2; Defs.' L.R. 56.1 Statement, Ex. B, Dep. of Joseph
Pierce at 43.)

Plaintiff contends that on July 21, 2011, defendant Earl was
escorting him to a court appearance when Earl and other officers,
including Gordon, stopped him in a hallway and beat him up in
retaliation for derogatory comments plaintiff had made to Earl
earlier that morning.  (Pl.'s Resp. to Def.'s L.R. 56.1 Statement
¶¶ 9, 18-21.)  According to plaintiff, Gordon told him to stand
against the wall; Earl then said, "Talk that shit now," and punched
plaintiff in the left eye.  Gordon then punched plaintiff twice.
(Pl.'s Resp. to Def.'s L.R. 56.1 Statement ¶¶ 19-20.)  Plaintiff
fell to the floor, and Gordon, Earl, and another officer stomped on

and beat plaintiff. (Pierce Dep. at 93-94.) Other officers
allegedly arrived and joined in, beating plaintiff with their
walkie-talkies and kicking, punching, and stomping on him. (Id. at
90, 96.) Plaintiff estimates that at least 13 officers punched him
more than 100 times and stomped on him more than 100 times. (Id.
at 99, 124-26.)

Plaintiff was transported to the Cook County Hospital (the
"Hospital") that day. The next day, he was transferred from the
Hospital to Cermak Health Services ("Cermak"), the medical division
of the Jail. He was transferred back to the Hospital on August 8,
2011 and then back to Cermak on August 11, 2011. (Defs.' Resp. to
Pl.'s L.R. 56.1 Statement ¶¶ 51-53.) Plaintiff states that he had
surgery on October 1, 2011 "to repair [his] orbital bone and
reposition [his] left eye." (Pl.'s Resp. to Defs.' Mot. for Summ.
J., Ex. A, Aff. of Joseph Pierce ¶ 8.)

## C.    Exhaustion of Administrative Remedies

Pierce alleges in Count I that the defendant officers used
excessive force or failed to intervene during the use of excessive
force, thereby violating 42 U.S.C. § 1983. Defendants first argue
that Pierce failed to exhaust the Jail's administrative remedies
prior to bringing suit, as the Prison Litigation Reform Act of 1995
("PLRA") requires. See 42 U.S.C. § 1997e(a) ("No action shall be
brought with respect to prison conditions under section 1983 of
this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); <u>Fluker v. County of Kankakee</u>, 741 F.3d 787, 791 (7th Cir. 2013). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). The exhaustion requirement "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." <u>Woodford v. Ngo</u>, 548 U.S. 81, 94 (2006).

The Seventh Circuit takes a "strict compliance" approach to exhaustion and interprets the PLRA to require a prisoner to properly use the institution's grievance process by following its specific rules and procedures. <u>Dole v. Chandler</u>, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must exhaust administrative remedies even if he believes that the process is futile or requests relief that the relevant administrative body does not have the power to grant, <u>id.</u> at 808-09, but the duty to exhaust is limited to those remedies that are "available in fact and not merely in form." <u>Schultz v. Pugh</u>, 728 F.3d 619, 620 (7th Cir. 2013). "[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." <u>Dole</u>, 438 F.3d at 809.

Lack of exhaustion is an affirmative defense, with the burden of proof on the defendants.  <u>Turley v. Rednour</u>, 729 F.3d 645, 650 (7th Cir. 2013) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 203-04 (2007)).  On summary judgment, defendants must "do more than point to a lack of evidence in the record; rather, they must establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies."  <u>See</u> <u>Santiago v. Anderson</u>, 496 Fed. App'x 630, 636 (7th Cir. 2012).

The Cook County Department of Corrections has established an Inmate Grievance Procedure (the "Procedure").  (Defs.' L.R. 56.1 Statement, Ex. E, Aff. of John Mueller, Ex. 1.)  The Procedure requires an inmate to file a grievance, defined generally as "a written complaint by an inmate regarding a policy within the CCSO [the Sheriff's Office], a condition in the CCSO, or a CCSO action or incident affecting an inmate," "within 15 days of the event he/she is grieving."  (<u>Id.</u> at 2-3.)  To file a grievance, "the inmate shall fill out an Inmate Grievance/Response Form.  If forms are not available, the use of blank writing paper or other department forms is acceptable."  (<u>Id.</u> at 3.)  The Procedure also requires the inmate to "deliver the signed and dated Inmate Grievance/Response Form to the CRW [Correctional Rehabilitation Worker]/Platoon Counselor."  (<u>Id.</u>)  The CRW/Platoon Counselor is defined as "the Sheriff's Office employee assigned to collect,

process grievances and assist detainees with the grievance process." (Id. at 2.) The Procedure does not contain any provision that excuses untimely filings for good cause.

Plaintiff filed a complaint about the alleged incident with the Sheriff's Office of Professional Review (the "OPR").[3] Participation in an internal-affairs investigation is nonetheless "no substitute for an available grievance process" and therefore does not exhaust available administrative remedies. Pavey v. Conley, 663 F.3d 899, 905 (7th Cir. 2011) ("Pavey II"). Pierce effectively fails to dispute that he did not file a grievance by using the Inmate Grievance Procedure. He testified at his deposition that could not remember whether he had filed a grievance, Pierce Dep. 48-49, and has failed to submit any evidence that he filed one. Defendants have submitted the affidavit of John Mueller, Deputy Director of Inmate Services at the Cook County Department of Corrections, who states that a "thorough review of the CCDOC grievance records was conducted" to search for "Grievances and Non-Grievance/Requests" by Pierce relating to the July 21, 2011 incident and that Pierce did not file any such grievance or request. (Mueller Aff. ¶¶ 6-7.) Defendants rely on Mueller's affidavit when stating in their Local Rule 56.1 Statement that "Mr. Pierce did not file any grievances or requests whatsoever

---

[3] Plaintiff states that he asked his mother to file this complaint. (Pierce Aff. ¶ 14.)

regarding any incident alleged to have occurred in Division 9 in the Cook County Jail." Plaintiff responds: "Disputed. There is no indication in the record of what a request is. However, Mr. Pierce did make several requests to various correctional officers for a grievance forms [sic] and to speak with a counselor." (Pl.'s Resp. to Defs.' L.R. 56.1 Statement ¶ 40.) Because plaintiff fails to respond to that portion of the statement regarding his failure to file a grievance, the court deems it admitted.

Plaintiff contends that the grievance policy at the Jail was in fact unavailable to him within the meaning of the PLRA for two reasons: 1) he was physically incapable of drafting and filing a grievance within the 15-day window; and 2) Jail correctional officers and staff members prevented him from filing a grievance. The Seventh Circuit has held that an administrative remedy is not "available" to a person physically unable to pursue it, Hurst v. Hantke, 634 F.3d 409, 412 (7th Cir. 2011), or when officials at the institution prevent an inmate from using the administrative process, Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006), or mislead the inmate about what steps he must take to pursue a remedy, Pavey II, 663 F.3d at 906. Plaintiff submits an affidavit in which he states in pertinent part as follows:

> On July 21, 2011 I was severely beaten by Cook County Sheriff Correctional officers. The officers broke my left orbital bone causing my left eye to get knocked back and down into my skull. The damage done to my eyes and face was so severe that I could barely see anything for almost a month and suffered from double vision. I

had to wait until October 1, 2011 for the swelling in my face to go down enough to get surgery to repair my skull. As a result of this beating I was taken to the Cook County Hospital on July 21, 2011.

. . .

On about ten occasions, from July 21, 2011--August 8, 2011, I spoke to correctional officers and requested grievance forms and access to a counselor to talk about the grievance process and for help making a grievance. The sheriffs repeatedly told me that I needed to speak to a counselor to file the grievance. I was repeatedly told the counselor would get around to me eventually but I never saw or met one, until a month after the incident. When I was at Cermak, on several occasions I saw guards pass my room, I would flag them down and ask them for grievance forms. They always either told me that they didn't have them, or that I would need to speak to a counselor.

I was in the Cerma[k] Hospital unit of the Cook County Jail for more than a month after the beating and I did not have access to grievance forms or a counselor while I was at either Cook County Hospital or Cerma[k] Infirmary. I did not have access to pens or pencils while at Cerma[k] or Cook County Hospital.

In the first month after I was beaten, I could barely see, get to the shower, leave my room, or go to the common area. I could not go anywhere or do anything unassisted because I could barely see, was medicated, and would become dizzy if I walked around too much. I had headaches, double vision, and blurred vision[.] My face was so swollen I could barely see anything and could not read or see well enough to identify what papers I was given and could not see what I was writing on papers. To this day I have headaches, double vision, and blurred vision.

I do not know which guards I asked for access to a counselor or for grievance forms because my eyesight was very bad at the time and I could not see their badges for their names or star numbers.

After a week of not getting the forms or seeing a counselor, I asked my mother, Ester Pierce-Pearson to file a complaint for me.

I did not give this information at my deposition because I was never asked about my stay at Cook County Hospital or Cermak Infirmary. I was also never asked if I tried to file a grievance in this case.

(Pierce Aff. ¶¶ 3, 10-15.)

In reply, defendants assert that plaintiff's arguments are "spurious," and they deem his affidavit "unsupported" and "self-serving." (Defs.' Reply at 2, 6-7.) The Seventh Circuit, however, has debunked the notion that evidence presented in a "self-serving" affidavit is insufficient to thwart summary judgment. See Payne v. Pauley, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment--including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial--a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.").

Defendants also submit in reply the affidavit of Susie Harris-Richardson, who was a Correctional Rehabilitation Worker at Cermak at the relevant time. Her duties included attending to inmate needs, addressing their requests, and assisting them with grievances. (Defs.' Reply to Pl.'s L.R. 56.1 Statement, Ex. A, Aff. of Susie Harris-Richardson ¶¶ 1-3.) Harris-Richardson states that "each day", she "would go from living unit to living unit to see if any inmates had requests, if they needed blank grievance forms, or to collect grievance forms that had been filled out," and

was also "available to answer any questions regarding their requests or the grievance process." (Id. ¶ 4.) She has "no independent recollection of" Pierce but states that any interaction she "would have had" with him "would have either been through a filed grievance or reflected in the Request logbook." (Id. ¶ 5.) She describes the "CCDOC Master Grievance log book" and the "Request logbook" and states that she reviewed the Request logbook (without specifying for which dates) and that "it shows that on July 22, 2011, Joseph Pierce . . . made a request for me to contact his family regarding the status of his incarceration. Joseph Pierce did not make any further requests during the relevant time period." (Id. ¶ 6-8.)[4] Harris-Richardson also states (without explaining what she searched or whether she reviewed the Master Grievance log book): "Upon completion of my search, and reviewing the Complaint, I found that Mr. Pierce never filed any grievance related to the issues alleged in his Complaint." (Id. ¶ 9.)

Considering the facts in a light most favorable to plaintiff, as is required at this procedural posture, the court concludes that defendants have failed to show the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies. Plaintiff's affidavit

_____

[4] Plaintiff asks that the court strike paragraphs 7 and 8 of Harris-Richardson's affidavit on the grounds that they "constitut[e] garden-variety hearsay," are not based on personal knowledge, and are not accompanied by a copy of the "Request logbook." (Pl.'s Mem. of Law Regarding Susie Harris-[Richardson's] Affidavit.) Because the court is denying defendants' motion and holding a hearing on exhaustion, the request to strike is denied as moot.

sufficiently creates issues of material fact regarding whether an administrative remedy was actually "available" to him.  It is true, as defendants point out, that Pierce's affidavit does not contain officers' names or allegations of specific misconduct.  It is also true that Pierce was not so physically incapacitated that he was unable to ask his mother to file the OPR complaint.  On the other hand, Harris-Richardson's affidavit does not address the entirety of plaintiff's affidavit.  Moreover, defendants fail to substantively address plaintiff's contention that no writing implements were available to him during the 15-day period following the alleged incident.  These are issues that must be explored in an evidentiary hearing under the procedures set forth in Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008) ("Pavey I").  In Pavey I, the Court of Appeals explained:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a

> trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

544 F.3d at 742.

Because the court cannot say at this juncture that the evidence is so one-sided that no reasonable factfinder could find that Pierce was prevented from exhausting his adminstrative remedies, defendants' motion is denied without prejudice as to the exhaustion issue, and the court will set a hearing pursuant to Pavey I.

**D.    Section 1983 and Battery Claims**

**1.    Section 1983 – Fourteenth Amendment**

In his § 1983 claim, plaintiff alleges that the defendant officers "in physically abusing plaintiff and/or failing to intervene to prevent such abuse . . . violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures, and caused the injuries set forth above."  (Compl. ¶ 12.)  Defendants assert that plaintiff's claims arise under the Fourteenth Amendment, not the Fourth Amendment, because the alleged incident occurred while plaintiff was a pretrial detainee.  Pretrial detainees, having had a probable-cause hearing, are "protected from excessive force by the Due Process Clauses of the Fifth or Fourteenth Amendments," as opposed to the Fourth Amendment.  Kingsley v. Hendrickson, 744 F.3d 443, 456 (7th Cir. 2014); Williams v. Rodriguez, 509 F.3d 392, 403

(7th Cir. 2007). Plaintiff does not respond to defendants'
argument, so we will construe his § 1983 claim as a Fourteenth
Amendment claim and give him leave to amend his complaint
accordingly.

## 2. **Defendants Matanic, Young, and Winston**

Defendants Matanic, Young, Winston, and Parker contend that
the court should enter summary judgment in their favor on
plaintiff's § 1983 and battery claims because there is no evidence
of their personal involvement in the alleged incident.[5] Individual
liability under § 1983 is appropriate only where the individual
defendant caused or participated in a constitutional deprivation.
Smith v. Bray, 681 F.3d 888, 899 (7th Cir. 2012). Under Illinois
law, battery is the "unauthorized touching" of another that
"offends a reasonable sense of personal dignity." Chelios v.
Heavener, 520 F.3d 678, 692 (7th Cir. 2008) (citing Cohen v. Smith,
648 N.E.2d 329, 332 (Ill. App. Ct. 1995)).[6]

Plaintiff does not address defendants' arguments as to
Matanic, Young, or Winston, and he fails to submit any evidence
that these three defendants participated in or were present and
failed to intervene in the alleged beating. Therefore, the court

_____

[5] Defendants concede that Pierce's deposition testimony concerning Earl
and Gordon's actions is sufficient to create a genuine issue of material fact as
to their personal involvement. (Defs.' Mem. in Supp. of Mot. for Summ. J. at 9-
10.)

[6] The parties do not dispute that Illinois law applies to plaintiff's
state-law claims.

will enter summary judgment against plaintiff and in favor of these defendants on plaintiff's § 1983 and battery claims.

### 3.   **Defendant Parker**

Plaintiff does maintain that summary judgment should not be entered in favor of defendant Parker on the § 1983 and battery claims.  Plaintiff points to his testimony that Parker "rushed" him "with the other officers when I was getting stomped and beaten and everything."  (Pierce Dep. at 107.)

Plaintiff's testimony that Parker was part of the group that "rushed" him immediately before he was beaten is sufficient to create an issue of material fact regarding whether Parker failed to intervene.  A jury could reasonably infer that because Parker was part of this group, he was standing very close to the officers that are alleged to have beaten plaintiff and thus could see what was happening and had a realistic opportunity to intervene. Plaintiff's testimony is not sufficient, however, to create a genuine issue of material fact regarding whether Parker used excessive force and battered plaintiff.  Plaintiff was asked whether he saw Parker "strike or beat" him and answered, "I don't remember."  (Pierce Dep. at 107.)  Therefore, the court enters summary judgment in Parker's favor and against plaintiff on the battery and excessive force claims but not on the failure to intervene claim.  The court denies Parker's summary judgment motion as to the plaintiff's failure to intervene claim.

## E.  **Respondeat Superior Claim**

Defendants argue that the Sheriff cannot be held liable in a § 1983 action under a theory of respondeat superior.  Plaintiff so concedes, but he correctly points out that the Sheriff can be held liable on the state-law battery claim under this theory, see Brown v. King, 767 N.E.2d 357, 361-64 (Ill. App. Ct. 2001), and defendants do not reply.  Accordingly, the court denies the Sheriff's motion for summary judgment on Count III.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [25] is granted as to plaintiff's § 1983 and battery claims against defendants Michael Matanic, Norlander Young and Shenita Winston and as to plaintiff's excessive force and battery claims against defendant Anthony Parker; the remainder of the motion is denied without prejudice.  Summary judgment is hereby entered in favor of defendants Michael Matanic, Norlander Young and Shenita Winston and against plaintiff on Counts I and II and in favor of defendant Anthony Parker and against plaintiff on plaintiff's excessive force claim and on Count II.

Plaintiff is given leave to file an amended complaint to assert his § 1983 claim under the Fourteenth Amendment instead of the Fourth Amendment by September 12, 2014.

The case is set for a status hearing on September 15, 2014 at 8:45 a.m.

- 17 -

DATE:       September 4, 2014


ENTER:      _____
            Amy J. St. Eve, United States District Judge