UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH PIERCE, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> COOK COUNTY SHERIFF'S ) <br> CORRECTIONAL OFFICER ) <br> JASON EARL #9136; COOK COUNTY ) <br> SHERIFF'S CORRECTIONAL ) <br> OFFICER ANTHONY PARKER #9337; ) <br> COOK COUNTY SHERIFF; and ) <br> COOK COUNTY, ) <br> ) <br> Defendants. ) | Case No. 12-cv-5725 <br><br> Judge John W. Darrah |

# MEMORANDUM OPINION AND ORDER

A *Pavey* hearing was held on February 26, 2015, to determine whether or not Plaintiff had exhausted his administrative process, as required by the Prisoner's Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e.

## BACKGROUND

On July 20, 2012, Plaintiff filed a Complaint, alleging federal and state claims stemming from an incident that occurred on July 21, 2011. Plaintiff alleges that he was beaten by several Cook County correctional officers. Defendants moved for summary judgment, arguing, *inter alia*, that Plaitniff had not exhausted his administrative remedies prior to suit. Judge St. Eve denied summary judgment without prejudice on the issue of administrative exhaustion and found that issues of fact remained to be resolved by a *Pavey* hearing.

The *Pavey* hearing was held on February 26, 2015. At the *Pavey* hearing, the Court admitted exhibits and heard testimony from three witnesses. Suzy Harris-Richardson works for

the Cook County Sheriff's Office as a Correctional Rehabilitation Worker ("CRW") and was assigned to Division 8 Cermak in July of 2011 through August of 2011 on the 8:00 a.m. to 4:00 p.m. shift. (Tr. 16:12-15, 17:6-18.)[1]  Dr. John M. Roberts is an ophthalmologist who worked at Stroger Hospital and treated Plaintiff. (Tr. 109:9-16.) Plaintiff himself also testified. The parties submitted written closing arguments.

## LEGAL STANDARD

Prisoners must exhaust all available administrative remedies, in accordance with prison procedural rules, before pursuing § 1983 actions in federal court. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (citing, 42 U.S.C. § 1997e(a) (2006); and *Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006)). The Seventh Circuit has "a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, to be available, a remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

## ANALYSIS

It is undisputed that Plaintiff failed to file a grievance, the available administrative remedy. The parties dispute whether the grievance process was made available to Plaintiff between July 21, 2011 and August 5, 2011. Plaintiff argues that the grievance policy was not available to him within the meaning of the Prisoner Litigation Reform Act because: (1) he was physically incapable of drafting and filing a grievance within the 15-day window; and (2) Jail correctional officers and staff members prevented him from filing a grievance.

---

[1] All transcript citations are from the *Pavey* hearing conducted on February 26, 2015.

Where exhaustion of administrative remedies is contested:

(1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

An administrative remedy is unavailable when a deadline "could not possibly be complied with" due to physical incapacity. *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). Plaintiff testified that he was beaten by Cook County correctional officers in Division 9 on July 21, 2011. (Tr. 137:1-6.) Plaintiff could not see or walk for the first fifteen days after he arrived at Cermak Hospital. (Tr. 137:21-24.) Plaintiff was taken to see the doctors at Cermak around 8:00 or 9:00 in the morning, three to four times a week. (Tr. at 139: 3-7, 140:1-3.) Plaintiff also testified that he could not read a standard sheet of paper with standard print on it from July 21, 2011 to August 5, 2011, and that he was not physically capable of filling out a grievance form. (Tr. 141:13-16, 142:5-7.)

Dr. John Roberts saw Plaintiff in the afternoon of July 21, 2011. (Tr. at 111:3-8.) Plaintiff had suffered two orbital fractures as a result of blunt head trauma. (Tr. at 111:21-24.) His left eye was swollen shut. (Tr. at 112:9-15.) Roberts examined Plaintiff again on August 10, 2011. (Tr. at 115:13-16.) At the second examination Plaintiff's left eye had not shown improvement and the vision in his right eye was 20/100. (Tr. at 117:13-14.) Plaintiff still had some swelling and some fluid in his left eye. (Tr. at 124:1-3.) Because Roberts did not know the quality of Plaintiff's eyesight before the incident on July 21, 2011, he could not conclude whether Plaintiff's vision was worse after the incident than before. (Tr. at 121:10-16.) Roberts testified that it may have been possible for Plaintiff to read a 10- to 12-point font at a near distance. (Tr. at 117:16.) Plaintiff also complained about double vision at his second examination. (Tr. at 117:25-118:1.) Plaintiff had a history of wearing corrective lenses, but they were broken during the altercation. (Tr. at 119:12-15.)

Defendants argue that Plaintiff's request to CRW Harris-Richardson to contact his family shows that Plaintiff was capable of sufficiently communicating to complete a grievance. Harris-Richardson's logbook has an entry, dated July 22, 2011, which states: "Pierce, J. Inmate 20100826022, Living Unit 3 North, CRW contacted inmate's family regarding inmate's incarceration." (Tr. at 42:17-19; Def's. Exh. 3.) The logbook does not state that Plaintiff asked her to call his family, but Harris-Richardson testified that she would not have recorded it in her CRW logbook had he not asked. (Tr. at 95:8-15.) Harris-Richardson has no independent recollection of Plaintiff. (Tr. at 35:20-22.)

Plaintiff argues that his medical records show that he was not on the tier at the time Harris-Richardson would have made her rounds. Plaintiff was taken to Stroger hospital on

4

July 21, 2011 and stayed overnight for observation. The medical records contain a note, indicating that Plaintiff received at least one test at Cook County Hospital on July 22, 2011, as late as 10:45 a.m. and was discharged from Cook County Hospital at 11:06 a.m. (Dkt. 75-2, pp. 4, 14.) The medical records further show that, on July 22, 2011, Plaintiff arrived at the Cermak emergency room at 11:20 a.m. and was discharged at 1:01 p.m. (Dkt. 75-1, pp. 3-4.) Harris-Richardson testified that she usually did her rounds between 9:00 and 10:00 a.m. (Tr. 53:19-20, 56:19-24.) It is not clear that Harris-Richardson personally spoke to Plaintiff about calling his family. However, the parties stipulated that Esther Pierce Pearson would testify that Plaintiff contacted her on July 23, 2011, and asked her to file a complaint regarding the incident. (Tr. 161:6-12.) The copy of the internal affairs complaint also indicated that Plaintiff called Pearson and told her about the incident. (Def's. Exh. 4.)[2] If Plaintiff was capable of calling his mother, describing what happened, and asking her to file an internal affairs complaint, he was not incapacitated to the extent that administrative relief was unavailable to him. The evidence shows that Plaintiff was not physically incapacitated to the point that he could not have asked for a grievance form and assistance in filling one out.

When prison officials prevent an inmate from using the administrative process, "the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Plaintiff asked a guard for a grievance form, but the guard told him that he would have to speak with a CRW. (Tr. 140:14-24.) Plaintiff testified that he never saw a social worker or CRW in the fifteen days after July 21, 2011. (*Id.* at 140:4-6.) Harris-Richardson testified that she visited every Tier on a daily basis. (*Id.* at 25:2-7.) Upon arriving at any

---

[2] Plaintiff testified that his brother was the person who called their mother, but that is contradicted by the internal affairs complaint and Pearson's stipulated testimony.

particular Tier, Harris-Richardson would announce her presence and collect her paperwork, which would include grievance forms. (*Id.* at 24:3-12). Grievance forms were available in a placard attached to the wall and at the officer's desk. (*Id.* at 29:10-13). If an inmate was physically unable to fill out a grievance, Harris-Richardson would offer her assistance to complete the grievance. (*Id.* at 31:11-13.) Harris-Richardson's testimony was credible in this regard. The evidence does not show that Plaintiff was prevented from using the administrative process.

Plaintiff also argues that he did not know about the new grievance procedure because it had only been in effect for approximately one week. "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015). Prison authorities are not allowed to "change their grievance rules once litigation [has begun] or simply keep prisoners in the dark about the real rules." *Id.* The Cook County Department of Corrections "Detainee Grievance Procedure" Sheriff's Order 11.14.5.0 governed the administrative grievance process at Cook County, starting on July 14, 2011. The Detainee Grievance Procedure requires an inmate to properly file a grievance within fifteen days of the alleged offense. In the past, grievance forms would be collected by sworn officers; but after the change in policy, only a CRW could accept grievance forms. (Tr. at 82:13-17, 83:19-21.) Under the new policy, officers were not allowed to collect grievances. (Tr. at 89:9-17.) Harris-Richardson has never given any inmates training on how to file a grievance. (Tr. at 63:9-15.) However, Plaintiff testified that when he asked a guard for a grievance form, the guard told him to speak with a CRW. (Tr. 140:14-24.)

6

While the rule had changed, Plaintiff was informed that he needed to speak with a CRW in order to file his grievance. Plaintiff was not "kept in the dark" about the necessary procedure, and the procedure did not change after his lawsuit was filed. The evidence shows that, while Plaintiff may not have been aware of the precise procedure for filing a grievance, he was informed of what was required.

## CONCLUSION

For the reasons discussed above, the Government has proven by a preponderance of the evidence that Plaintiff failed to exhaust the administrative procedures.

Date:	June 11, 2015	_____
	JOHN W. DARRAH
	United States District Court Judge